UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

FRANK INVESTMENTS, INC., *et al.*,                    Lead Case No. 18-20019-EPK

      Debtors.                                                    Chapter 11
                                                                (Jointly Administered)

_____/

**DISCLOSURE STATEMENT FOR SECOND AMENDED
CHAPTER 11 PLAN OF LIQUIDATION OF
<u>FRANK INVESTMENTS, INC., A NEW JERSEY CORPORATION</u>**

May 11, 2020

Bradley S. Shraiberg, Esq.
Patrick Dorsey, Esq.
Shraiberg, Landau & Page, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: bshraiberg@slp.law
Email: pdorsey@slp.law

**ATTORNEYS FOR THE DEBTOR**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................5

     A.    Overview of the Plan ........................................................7
     B.    Voting Instructions.............................................................8

II.    BACKGROUND OF DEBTOR ........................................................8

III.   THE CHAPTER 11 CASE .............................................................9

     A.    Commencement of the Chapter 11 Case ...........................9
     B.    Retained Professionals ......................................................9
     C.    The Claims Process............................................................9
     D.    Administration of Assets in Bankruptcy and Through the Plan .....................9

IV.   CHAPTER 11 PLAN.....................................................................10

     A.    Plan Overview.................................................................10
     B.    Unclassified Claims .......................................................10
           1.    Allowed Administrative Claims ...........................10
           2.    Priority Tax Claims ...............................................11
           3.    United States Trustee's Fees .................................11
     C.    Treatment of Claims .......................................................11
     Class 1.  Allowed Secured Claim of U.S. Bank....................................11
     Class 2.  Allowed Secured Claim of Bancorp......................................11
     Class 3.  Allowed General Unsecured Claims ....................................12
     Class 4. Allowed Bancorp Deficiency Claim .................................12
     Class 5.  Allowed Equity Interests.....................................................13
     D.    Distributions Under the Plan..........................................13
     E.    Procedures for Allowance or Disallowance of Disputed Claims........................14
     F.    Executory Contracts and Unexpired Leases ...................15
     G.    Amendment, Modification or Revocation of the Plan ...........................16
     H.    Means for Implementation and Effect of Confirmation of Plan ..................16
           1.    Discharge of Debtor ..............................................17
           2.    Injunction Related to Discharge............................17
           3.    Injunction Against Interference with the Plan .......17
     I.    Conditions Precedent to Effectiveness of Plan ................18
     J.    Retention of Jurisdiction ................................................18
     K.    Post-Confirmation Date Service List ..............................19

V.    CONFIRMATION OF THE PLAN.................................................19

     A.    Solicitation of Votes ........................................................19
     B.    Confirmation Hearing ......................................................20
     C.    Confirmation Standards ...................................................20

VI.    Funding and feasibility of the Plan ................................................................................21

    A.    Risks to the Creditors ...........................................................................21
    B.    Best Interests Test and Liquidation Analysis........................................21
    C.    Feasibility.............................................................................................22

CONCLUSION........................................................................................................................22

**EXHIBIT INDEX**

EXHIBIT A:        Second Amended Chapter 11 Plan of Liquidation of Frank Investments, Inc., a New Jersey Corporation [ECF No. 563]

**DISCLOSURE STATEMENT FOR SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY FRANK INVESTMENTS, INC.**

> THE DEBTOR RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.

## I.  INTRODUCTION

Frank Investments, Inc., a New Jersey corporation (the ""Debtor" or Plan Proponent"), provides this Disclosure Statement (the "Disclosure Statement") to all of Debtor's creditors in order to permit such creditors to make an informed decision in voting to accept or reject the Second Amended Chapter 11 Plan of Liquidation Proposed By the Debtor (the "Plan") filed on May 11, 2020 with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in connection with the above-captioned case (the "Chapter 11 Case").  A copy of the Plan is attached to this Disclosure Statement as **EXHIBIT A**.  Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

The Disclosure Statement is presented to certain holders of Claims[1] against the Debtor in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").  Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the Debtor's creditors, to make an informed judgment whether to accept or reject the Plan.  The Disclosure Statement may not be relied upon for any purpose other than that described above.

**THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED.  THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.**

**NO REPRESENTATIONS CONCERNING DEBTOR (PARTICULARLY AS TO THE VALUE OF ITS PROPERTY) ARE AUTHORIZED BY PLAN PROPONENT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR PLAN PROPONENT, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

---

[1]  Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF DEBTOR AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN.  ACCORDINGLY, THE PLAN PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING DEBTOR OR HIS FINANCIAL CONDITION IS ACCURATE OR COMPLETE. THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE PLAN PROPONENT'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS ARE CORRECT.  THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  EACH CREDITOR IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.

A STATEMENT OF THE ASSETS AND LIABILITIES OF DEBTOR AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS

CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

Pursuant to the Bankruptcy Code, the Plan was filed with the Bankruptcy Court May 8, 2020 and this Disclosure Statement was filed thereafter. The Bankruptcy Court will schedule a hearing on approval of this Disclosure Statement and on confirmation of the Plan (the "Confirmation Hearing") to be held at the United States Bankruptcy Court, Flagler Building, 1515 N. Flagler Drive, Suite 801, Courtroom B, West Palm Beach, Florida 33401. At the Confirmation Hearing, the Bankruptcy Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact Shraiberg, Landau & Page, P.A., 2385 NW Executive Center Drive, Suite 300, Boca Raton, FL 33431, Phone: (561) 443-0800, Facsimile: (561) 998-0047.

A.    Overview of the Plan

THE DESCRIPTION OF THE PLAN SET FORTH HEREIN CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE PLAN DOCUMENTS. THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.

Chapter 11 is the chapter of the Bankruptcy Code primarily used for reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors. With this purpose in mind, individuals and businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and interests in a debtor's bankruptcy estate.

The Plan divides the Claims against the Debtor into Classes. Certain Claims—in particular, Administrative Claims—remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code. The Plan assigns all other Claims and Interests as described below.

Do you have a claims summary to support the calculations, particularly the Admin, Priority and Unsecured Claim amounts

| Class | Description | Approximate Amount Asserted | Estimated Allowed Amounts | Estimated Recovery | Status |
|---|---|---|---|---|---|
| N/A | Administrative Claims | $50,000.00 | $50,000.00 | 100% | Unclassified and not entitled to vote |
| N/A | Priority Claims | $10,000.00 | $10,000.00 | 100% | Unclassified and not entitled to vote |

| Class | Description | Approximate Amount Asserted | Estimated Allowed Amounts | Estimated Recovery | Status |
|---|---|---|---|---|---|
| N/A | US Trustee's Fees | $975.00 | $975.00 | 100% | Unclassified and not entitled to vote |
| 1 | Allowed Secured Claim of U.S. Bank | $500,000.00 | $500,000.00 | 100% | Impaired. |
| 2 | Allowed Secured Claim of Bancorp | $17,200,000.00 | $4,500,000.00 | 26% | Impaired |
| 3 | Allowed General Unsecured Claims | $20,000,000.00 | $10,000,000.00 | 3% | Impaired |
| 4 | Allowed Bancorp Deficiency Claim | N/A | $12,700,000.00 | 0% | Impaired |
| 5 | Equity | N/A | N/A | 0% | Impaired |

## B.   Voting Instructions

The Bankruptcy Code entitles only holders of impaired claims who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on the Plan. Holders of classes of claims that will receive no distributions under a proposed plan are deemed to reject that plan and, therefore, not entitled to vote on the Plan. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan. Under the Plan, Class 1, Class 2, Class 3, and Class 4 are impaired and entitled to vote on the Plan. Class 5 consists of insider claims, and its votes are therefore not calculated when determining whether the Plan has been accepted or rejected. Additionally, Class 5 is not receiving or retaining any property under the Plan, and is therefore deemed to have rejected the Plan.

## II.   BACKGROUND OF DEBTOR

The Debtor, a New Jersey corporation, owns various parcels of real property. The Debtor is also affiliated with a number of entities that owned and operated movie theaters.

On August 17, 2018 the Debtor filed a voluntary petition for relief under chapter 11 of the Code. Prior to the Debtor filing for bankruptcy protection, it defaulted on a cross-collateralized mortgage with its primary secured lender, Bancorp. This prompted the Debtor's chapter 11 filing.

### III.    THE CHAPTER 11 CASE

**A.    Commencement of the Chapter 11 Case**

As set forth in § II above, the Debtor filed for chapter 11 bankruptcy due to a default with its primary creditor, Bancorp.

**B.    Retained Professionals**

The Bankruptcy Court has authorized the Debtor to retain certain professionals in connection with the Case.  Specifically, Debtor has retained, and the Bankruptcy Court approved the retention of, SLP as general bankruptcy counsel.  The Debtors has also employed GlassRatner as a chief restructuring officer and/or financial advisor; and the Debtor has retained Mertz Corporation d/b/a NAI Mertz as a broker for the Real Properties.  ECF Nos. 74, 306 and 312.  The Debtor also retained NAI Merin Hunter Codman, Inc. as a broker for a separate real property that has been sold.  *See* ECF No. 338.

**C.    The Claims Process**

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case.  The Court establishes a "bar date"—a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution.  After the filing of all claims, the debtor evaluates such claims and can raise objections to them.  These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors.

The deadline for filing proofs of Claims against the Debtor, other than claims of governmental units and Administrative Claims shall be the last date for creditors to file Proofs of Claim in the Case (the "General Bar Date").

The Debtor will review, analyze and resolve Claims on an ongoing basis as part of the claims reconciliation process.  Nonetheless, additional claims may be asserted against the Debtor subsequent to the expiration of the general Bar Date and the actual ultimate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Plan Proponent's estimates.  Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

**D.    Administration of Assets in Bankruptcy and Through the Plan.**

The Debtor has liquidated or abandoned a number of its assets during this bankruptcy case, and will liquidate remaining assets through the Plan.  The assets have been liquidated or abandoned to date include:

- Automobiles consisting of a 2002 Ford Econoline van, 2015 Audi A7, 2016 Aston Martin Vanquish, 2015 Land Rover Range Rover, 2018 GMC Terrain and 2011 Dodge Grand Caravan were either abandoned due to a projected lack of equity or, in the case of leased vehicles, had their subject leases rejected.  *See* ECF No. 283.

The Debtor has also filed a notice to abandon its last remaining automobile, a 2014 Mercedes ML350.

- Real property located at 711 Beach Avenue, Cape May, New Jersey was sold to third party, John F. Mita Trust for the Family of Eustace W. Mita, for $6,650,000.00, with the bulk of said proceeds being paid to the mortgagee of the property, Bancorp.  *See* ECF No. 438.

- Real property located at 5207 and 5213 Ventnor Avenue, Ventnor, New Jersey was sold to third party, Stone Harbor Theatre, LLC, for $350,000.00, with the bulk of said proceeds being paid to the mortgagee of the property, Bancorp.  *See* ECF No. 209.

- Real property located at 11380 Prosperity Farms Road, Unit 101, Palm Beach Gardens, Florida, was sold to third party, Eclatant Properties, LLC, for $475,000.00, with the Debtor receiving $135,851.14 in net sale proceeds.  *See* ECF No. 417.

The Debtor will liquidate the remaining Liquidating Assets, including the Banyan Interest, two parcels of land, on cash on hand, through the Plan.

## IV.    <u>CHAPTER 11 PLAN</u>

**THE FOLLOWING IS A BRIEF SUMMARY OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.  THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN.  CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN.  SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN.  ALL HOLDERS OF CLAIMS ARE URGED TO REVIEW THE PLAN CAREFULLY.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON DEBTOR AND ALL HOLDERS OF CLAIMS.**

**A.    Plan Overview**

The Plan Proponent believes that confirmation of the Plan provides the best opportunity for maximizing recoveries for Creditors.

**B.    Unclassified Claims**

**1.    Allowed Administrative Claims**

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims.  All other holders of Allowed Administrative Claims (with the exception of the professionals who will be paid 100% of the amount allowed by the Bankruptcy Court upon

application to the Bankruptcy Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Bankruptcy Court, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

### 2.   Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under § 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of Debtor's business on the date of assessment of such Claim.

### 3.   United States Trustee's Fees

The Liquidating Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Liquidating Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Liquidating Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

## C.   Treatment of Claims

### Class 1.   Allowed Secured Claim of U.S. Bank

(a)   Description. Class 1 consists of the Allowed Secured Claim of U.S. Bank in the approximate amount of $434,538.76 as of the Petition Date. *See* Proof of Claim No. 6. The claim is secured by tax liens on Black Horse may be accruing postpetition interest and other charges.

(b)   Treatment. In accordance with Article VIII of the Plan, the Debtor or Liquidating Debtor shall sell Black Horse free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances attaching to the proceeds of the sale in the order of their prepetition priority. Upon the sale of Black Horse, the Class 1 Claim shall receive proceeds of the Sale in an amount up to the Allowed Amount of such Claim. If the proceeds of the Sale are insufficient to pay the Class 1 Claim in full, any remaining deficiency amount shall constitute an Allowed General Unsecured Claim under Class 3.

(c)   Impairment. The Class 1 Claim is Impaired.

### Class 2.   Allowed Secured Claim of Bancorp

(a)   Description. Class 2 consists of the Allowed Secured Claim of Bancorp in the approximate amount of $17,277,140.61 as of the Petition Date. *See* Proof of Claim No. 25. The claim is secured by a cross collateralized mortgage on Black Horse, Absecon and White Horse, has been reduced by sales of certain real properties that occurred after the Petition Date and prior to this Plan. *See* ECF Nos. 209 and 438 (sale orders).

(b)    <u>Treatment</u>. The Class 2 Claim shall be treated as follows under the Plan:

(i)    In accordance with Article VIII of the Plan, the Debtor or Liquidating Debtor shall sell Black Horse free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances attaching to the proceeds of the sale in the order of their prepetition priority.  Upon the sale of Black Horse, the Class 2 Claim shall receive proceeds of the Sale in an amount up to the Allowed Amount of such Claim.

(ii)    In accordance with Article VIII of the Plan, the Debtor or Liquidating Debtor shall sell Absecon free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances attaching to the proceeds of the sale in the order of their prepetition priority.  Upon the sale of Absecon, the Class 2 Claim shall receive proceeds of the Sale in an amount up to the Allowed Amount of such Claim.

(iii)    In accordance with Article VIII of the Plan, the Debtor or Liquidating Debtor shall sell White Horse free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances attaching to the proceeds of the sale in the order of their prepetition priority.  Upon the sale of White Horse, the Class 2 Claim shall receive proceeds of the Sale in an amount up to the Allowed Amount of such Claim.

(iv)    If the proceeds of the sales of Black Horse, Absecon and White Horse are insufficient to pay the Class 2 Claim in full, any remaining deficiency amount shall comprise the Allowed Bancorp Deficiency Claim under Class 4.

(c)    <u>Impairment</u>.  The Class 2 Claim is Impaired.

### Class 3.  Allowed General Unsecured Claims

(a)    <u>Description.</u> Class 3 consists of Allowed General Unsecured Claims.

(b)    <u>Treatment</u>. In full satisfaction, settlement, release, extinguishment and discharge of such Claim, each holder of an Allowed Class 3 Claim shall receive Distributions on a *pro rata* basis with the Holders of all Allowed Claims in this Class 3 from available cash on deposit from time to time with the Debtor, the Liquidating Debtor and/or Plan Administrator, up to the full amount of each Allowed Claim, from Liquidating Assets net of post-Confirmation fees and expenses incurred in connection with the implementation and consummation of the Plan; provided, however, that, no Distribution shall be made to Holders of Class 3 Claims unless and until all Allowed Administrative Claims and all Allowed Priority Tax Claims are paid in full.

(c)    <u>Impairment</u>.  Class 3 is Impaired.

### Class 4. Allowed Bancorp Deficiency Claim

(a)    <u>Description</u>. Class 4 consists of the Allowed Bancorp Deficiency Claim.

(b)    <u>Treatment</u>. In full satisfaction, settlement, release, extinguishment and discharge of such Claim, the holder of the Class 4 Claim shall receive Distributions from available cash on deposit from time to time with the Debtor,  the Liquidating Debtor and/or Plan Administrator , up to the full amount of such Allowed Claim, from Liquidating Assets net of post-Confirmation fees and expenses incurred in connection with the implementation and consummation of the Plan; provided, however, that, no Distribution shall be made to the Holder of the Class 4 Claim unless and until all Allowed Administrative Claims, all Allowed Priority Tax Claims and all Allowed Class 3 Claims are paid in full.

(c)    <u>Impairment</u>.  The Class 4 Claim is Impaired.

### Class 5.  <u>Allowed Equity Interests</u>

(a)    <u>Description.</u> Class 5 consists of Equity Interests.  Equity Interests consist of any share of preferred stock, common stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.  Equity interests in the Debtor are owned by the following individuals: Bruce Frank (75.0%) and Deborah Frank (25.0%).

(b)    <u>Treatment.</u> Holders of Class 5 Equity Interests will not receive or retain any property under the Plan.  All holders of Equity Interests in the Debtor shall be extinguished on the Effective Date.  The Debtor will not be soliciting votes from Class 5 Equity Holders and thus the holders of Class 5 Equity Interests are deemed to reject the Plan.

(c)    <u>Impairment</u>.  Class 5 is Imaired.

### D.    Distributions Under the Plan

1.    Subject to Rule 9010, and except as otherwise provided in Section 6.04 of the Plan, all distributions under the Plan shall be made by the Liquidating Debtor to the holder of each Allowed Claim or Allowed Equity Interest, on a quarterly basis, at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Distribution Record Date unless the Debtor or Liquidating Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

2.    Any payment of Cash made by the Liquidating Debtor pursuant to the Plan shall be made on a quarterly basis by check drawn on a domestic bank or by wire transfer.

3.    Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

4.    No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Liquidating Debtor to any holder of a Claim unless a request therefor is made in writing to the Liquidating Debtor, or unless the Distribution is a final Distribution.

5.    When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number

and fractions of less than ½ shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 6.03(f) of the Plan.

6.      In the event that any Distribution to any holder is returnable as undeliverable, the Debtor shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Debtor has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any Distribution shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date or the Distribution Date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

7.      Unless otherwise provided herein, all distributions (not defined) and deliveries to be made on the Effective Date shall be made on the Effective Date. Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

8.      At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtor or Liquidating Debtor shall have no obligation to recognize any transfer of any Claims occurring after the Distribution Record Date; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Distribution Record Date and prior to the Effective Date. The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Distribution Record Date.

## E.      Procedures for Allowance or Disallowance of Disputed Claims

### 1.      Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims

Any and all objections to any claim must be filed within fourteen (14) days prior to Confirmation (the "**Objection Deadline**"), or as otherwise ordered by the Court, or with respect to rejection claims, within fourteen (14) days of their filing (the "**Objection to Rejection Claims Deadline**"). In the event that the Debtor or Liquidating Debtor settles any claim objection, the Debtor may seek approval by submitting an Agreed Order in a form acceptable to the Debtor and the holder of the Disputed Claim. In the event that the Debtor and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtor will set the contested matter for hearing before the Bankruptcy Court and will provide all interested parties with notice of the date set.

If any distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder. A distribution of funds is unclaimed, if, without limitation, the holder of a Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules, the Amended Schedules

or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

Except as to applications for allowance of compensation and reimbursement of expenses under §§ 330 and 503 of the Code, the Debtor or the Liquidating Debtor shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date. All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Liquidating Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court. The Debtor or the Liquidating Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business. The Liquidating Debtor shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

Subject to applicable law, from and after the Effective Date, the Debtor will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan. Any and all objections to any claim must by filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline.

An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtor, at any time on or before the Claim Objection Deadline. The failure by Debtor to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtor's right to object to, or re-examine, any such Claim in whole or in part

### 2. Establishment and Maintenance of Reserve

On the initial distribution date and each subsequent distribution date, the Liquidating Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtor or the Court in accordance with Section 6.08 of the Plan (the "**Disputed Claims Reserve**").

### 3. Distributions Upon Allowance of Disputed Claims

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Liquidating Debtor upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

### F. Executory Contracts and Unexpired Leases

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the

rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to §§ 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed <u>rejected</u> by the Liquidating Debtor as of the Effective Date, <u>except</u> for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the Balloting Deadline; *provided, however*, that the Debtor or Liquidating Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtor or Liquidating Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtor or Liquidating Debtor that such document is an executory contract or an unexpired lease or that the Debtor or Liquidating Debtor have any liability thereunder.

## G.    Amendment, Modification or Revocation of the Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with § 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§ 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with § 1125 of the Code.  The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with § 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of §§ 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under § 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

## H.    Means for Implementation and Effect of Confirmation of Plan

1.      **Injunction Against Interference with the Plan**

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

*Without limiting the foregoing, the Confirmation Order shall provide, among other things, that all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor are, with respect to any such Claims or Equity Interests, permanently, enjoined from and after the Confirmation Date from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum, or any discovery) against or affecting, the Liquidating Assets or the Plan Administrator; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, order, or encumbrance of any kind against the Liquidating Assets or the Plan Administrator; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Liquidating Assets or the Plan Administrator; or (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that nothing in the Plan or Confirmation Order shall constitute a waiver of any rights or defenses of such persons with respect to such actions, provided, further, that such injunction shall neither bar any entity from asserting any defense in an action commenced by or on behalf of the Debtor, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan; provided, furthermore, that nothing contained in the Plan or Confirmation Order shall preclude the IRS from pursuing an action against any entity, or preclude any governmental entity from pursuing a criminal, police or regulatory action against any entity.*

2.      **Votes Solicited in Good Faith**

The Plan Proponent has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

3.      **Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

I.    **Conditions Precedent to Effectiveness of Plan**

The Plan shall not become effective unless and until the conditions set forth in Section 9.01 of the Plan shall have been satisfied or waived.

J.    **Retention of Jurisdiction**

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)    to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)    to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)    to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor or any other party in interest with standing to do so, pursuant to §§ 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)    to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)    to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)    to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by § 1142 of the Code;

(h)    to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)    to hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331, and 503(b) of the Code;

(j)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)    to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l)    to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)    to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)    to hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under § 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

(p)    to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)    to hear any other matter not inconsistent with the Code; and

(r)    to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

**K.    Post-Confirmation Date Service List**

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall continue to be effective, and further notices will be sent to such Entities.

## V.    <u>CONFIRMATION OF THE PLAN</u>

**A.    Solicitation of Votes**

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in Class 1, Class 2, Class 3 and Class 4 are impaired and entitled to vote on the Plan.  An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider.  A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the

provisions of the Code.  Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

## B.    Confirmation Hearing

The Court shall schedule the Confirmation Hearing to consider approval of this Disclosure Statement and confirmation of the Plan at the United States Bankruptcy Court for the Southern District of Florida, located at the C United States Bankruptcy Court, Flagler Building, 1515 N. Flagler Drive, Suite 801, Courtroom B, West Palm Beach, Florida 33401.  The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.  The Court shall set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the confirmation of the Plan.

Any objection to Confirmation must be in writing, specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim.  Any such objection must be filed with the Court, and serviced so that it is received by the Court and the following parties on or before the deadline set by the Court:

> Shraiberg, Landau & Page, P.A.
> Attorneys for the Plan Proponent
> 2385 N.W. Executive Center Drive, Suite 300
> Boca Raton, Florida 33431
> Attn: Bradley Shraiberg
>       Patrick Dorsey
>
> -and-
>
> Office of the U.S. Trustee
> 51 SW First Avenue, Room 1204
> Miami, FL 33130
> Phone: (305) 536-7285

## C.    Confirmation Standards

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the Bankruptcy Code.  Section 1129 of the Bankruptcy Code also imposes requirements that with respect to each class of claims, such class has accepted the plan or such class is not impaired under the plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims that is impaired under the Plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met.  The Plan Proponent believes that the Plan satisfies all of the requirements for confirmation for the reasons stated below.

## VI.    FUNDING AND FEASIBILITY OF THE PLAN

**A.    Risks to the Creditors**

The Plan Proponent does not anticipate that there are any significant federal tax consequences the Plan would have on Creditors. As stated above, the Disclosure Statement will not be construed to be advice on the tax, securities or other legal effects of the Plan. Each Creditor should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

**B.    Best Interests Test and Liquidation Analysis**

With respect to each impaired Class of Claims, confirmation of the Plan requires that each holder of an Allowed Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. To determine what holders of Claims of each impaired Class would receive if the Debtor were liquidated under Chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a Chapter 7 liquidation case and the assets were liquidated by a Trustee in bankruptcy. The cash amount that would be available for satisfaction of Claims would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of the Debtor, augmented by the unencumbered cash held by the Debtor at the time of the commencement of the liquidation case.

The Debtor's cost of liquidation under Chapter 7 would include the fees payable to the Chapter 7 trustee, as well as those fees that might be payable to other professionals that such a trustee might engage. The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims.

The Plan Proponent believes that each holder of an Allowed Claim will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. Specifically, Class 1 and Class 2 secured claims are being paid from the proceeds of real property sales. *See* Plan Art. V and VIII. The Debtor has been marketing the Real Properties for approximately one year and expects to receive fair market value for the sales. A chapter 7 trustee would fare no better in selling the Real Properties and, moreover, would reduce the return to creditors when taking chapter 7 trustee and professional fees into account. The primary means by which the Debtor expects to pay Class 3 Allowed General Unsecured Claims are (a) its cash on hand, which totaled approximately $372,000 as of December 31, 2019, and (b) proceeds from the sale of the Banyan Interest. Again, there is no reason these assets would produce a greater return to creditors in a chapter 7 liquidation, especially when taking chapter 7 trustee and professional fees into account.

**C.     Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan.  For purposes of determining whether the Plan meets this requirement, the Plan Proponent has analyzed the Debtor's ability to meet its financial obligations as contemplated thereunder.

The Plan Proponent believes that it will be able to provide the payments contemplated under the Plan based on the fact that the Plan provides for the liquidation of the Debtors and its Assets.  As such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## CONCLUSION

For all the reasons set forth herein, the Plan Proponent believes that confirmation and consummation of the Plan is preferable to all other alternatives.  Consequently, the Plan Proponent urges all eligible holders of Impaired Claims to vote to **accept** the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Court.

**DATED: May 8, 2020**

**DEBTOR IN POSSESSION:**

**FRANK INVESTMENTS, INC., A New Jersey Corporation**

Alan Barbee, CRO

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service on May 11, 2020.

Respectfully Submitted,

**SHRAIBERG, LANDAU & PAGE, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bshraiberg@slp.law
Email: pdorsey@slp.law

By:    /s/ Patrick Dorsey
        Bradley S. Shraiberg, Esq.
        Florida Bar. No. 121622
        Patrick Dorsey, Esq.
        Florida Bar. No. 0085841

EXHIBIT A
Chapter 11 Plan

[*See* ECF No. 563]